(C.D. 2574)

IROQUOIS CHINA CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided Septemer 22, 1965)

*Siegel, Mandell & Davidson* (*Murray Sklaroff* and *David Serko* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.
Before DONLON and RICHARDSON, Judges; RICHARDSON, J., concurring

DONLON, Judge: Plaintiff imported from Japan at the port of New York in October and November 1959, certain articles, shaped like cups, plates, and other dishes, and it was stipulated that they are composed of a vitrified nonabsorbent body. They were described on the invoices and in the entries as chinaware and were returned as dutiable, under paragraph 212, at 45 per centum ad valorem. The merchandise was liquidated as entered, on April 4, 1960, and April 6, 1960.

By protest received at the Custom House in New York May 27, 1960, plaintiff protested the liquidation classification, claiming that the merchandise is "unfinished ware, unfinished chinaware," and that duty should be at the rate of 15 per centum ad valorem under paragraph 214 "as amended." This is the protest claim before us.

Plaintiff's counsel, in his opening statement on trial, more particularly specified the protest claim, as follows:

We claim that the merchandise should be classified under Paragraph 214, at the rate of duty of 15 per centum, as manufactures of earthy or mineral substances or articles composed wholly or in chief value of earthy or mineral substances. [R. 2.]

On March 18, 1963, the parties answered "ready" when the case was called for trial. Plaintiff then introduced two articles representative of the merchandise in its imported condition, except that the cup was not broken when imported and it is now broken, and except that similar articles, but in other shapes and sizes, are also included in the entry merchandise.

It was stipulated "that the raw material which went into the manufacture of Collective Exhibit 1 is the usual earthy and mineral substances of which china is composed, and that Collective Exhibit 1 is composed of a vitrified non-absorbent body which when broken shows a vitrified or vitreous or semi-vitrified or semi-vitreous fracture." It

was further stipulated "that the merchandise at bar has no color, glaze or decoration."

On plaintiff's request, trial was continued to the April 1963 term.

At the April term, the parties entered into further stipulations of fact, pursuant to plaintiff's offer to stipulate, as follows:

Firstly, I offer to stipulate with Government counsel that the merchandise at bar was classified under the provisions of Paragraph 212, Tariff Act of 1930, as modified, as other vitrified wares, composed of a vitrified non-absorbent body, which when broken shows a vitrified, vitreous semi-vitrified, or semi-vitreous fracture * * * Other * * * not containing 25 per cent or more of calcined bone * * * Other, 45 per cent ad valorem.

Secondly, I offer to stipulate that after importation, the merchandise at bar is decorated and glazed, or glazed without decoration.

Thirdly, I offer into evidence as Plaintiff's Illustrative Exhibit 2, these two plates—Collective Illustrative; and I offer to stipulate * * * that Collective Exhibit 1 represents the merchandise in its condition as imported.

* * * I further offer to stipulate that after glazing and/or decorating and glazing the merchandise is sold at the retail level as china tableware.

Plaintiff's Collective Illustrative Exhibit 2 represents the merchandise at bar which has been decorated and glazed after importation, and that ware made by glazing, Plaintiff's Exhibit 1, without decorating would be plain white. [R. 9, 10, 11.]

On this record, the parties rested and submitted. They requested leave to file briefs, which was granted.

Thereafter, and before the filing of briefs, plaintiff's counsel moved to have submission set aside and the case set down for further trial in order that he might adduce the testimony of two witnesses, Mr. Earl Crane and Mr. Robert E. Anderson. Defendant opposed the motion. It was granted, and the case was set down for trial at the December 1963 term. Plaintiff was not then ready to proceed, and the case was not again tried until the April 1964 term, when plaintiff concluded its case and rested.

Plaintiff's sole witness was Mr. Robert E. Anderson. What became of Mr. Earl Crane, plaintiff's president, was not explained. It was Mr. Crane whom plaintiff's counsel held out, in his affidavit in support of the motion to reopen in order to take testimony, as the witness with "complete knowledge of the facts and circumstances surrounding the purchase, sale, commercial aspects and utility of the merchandise at bar, having been responsible for the planning and execution of the program of importation," and who had not been available at the time of the 1963 trial. Mr. Crane, so counsel's supporting affidavit recited, had "given the name of at least one other potential witness, Robert Anderson, who can testify as to the *technical aspects of the manufacture of and utility of the merchandise* at bar." [Emphasis added.]

Mr. Anderson said that he is plaintiff's vice president and general manager; that plaintiff, since 1895, has manufactured vitrified hotel chinaware; that, beginning in 1946, plaintiff began also to manufacture a line of home dinnerware, of the same body and glaze as its hotel chinaware; that it now has three additional lines of dinnerware, and has discontinued the production of hotel china.

Mr. Anderson took the degree of bachelor of ceramic engineering at Ohio State University in 1938 and (except for 3 years in the Army) had worked since 1938 as a ceramic engineer until he became plaintiff's plant manager. His testimony is descriptive of the processes of manufacture, in Japan, of the articles of exhibit 1; of the problems and difficulties encountered in manufacture there; of procedures he devised to improve the Japanese product and make it more acceptable for plaintiff's purposes; and of the finishing of the articles in plaintiff's factory after importation. Some of his testimony repetitively deals with facts that had been stipulated.

Mr. Anderson testified, as to the Japanese process of manufacture, that articles such as collective exhibit 1 are "placed into a tunnel kiln and fired at approximately 2300 degrees Fahrenheit." (R. 23.)

After importation, they are glazed and again fired in "a glost kiln at about 2000 degrees Fahrenheit * * *." (R. 24.) They are then sometimes decorated, sometimes not. If decorated, there is another firing "at a lower temperature" to fuse the decoration into the glaze surface. When finished, i.e., glazed and decorated, or merely glazed, the imported articles are sold as "Inheritance Fine China, Iroquois China Co., Syracuse, N.Y." (Collective illustrative exhibit 2.)

In describing difficulties encountered in Japan, Mr. Anderson referred to the articles, as imported, as "bisque." (R. 25.)

Illustrative exhibits 3 and 4 were said by Mr. Anderson not to be from the shipments in issue. Although from later shipments, he said that they are ware of the same type as the instant merchandise.

Costs at plaintiff's plant, involved in finishing the imported articles, are about 55 percent of total cost, the "bisque cost being approximately 45 per cent * * *." (R. 33.)

In plaintiff's manufacture of its domestic lines of chinaware, starting with the raw materials, there is a stage of manufacture where the product reaches "a bisque state such as exhibit 1 * * *." (R. 33.)

Notwithstanding repeated references both by plaintiff's counsel and his witness to "bisque" and Mr. Anderson's references to the imported articles as "ware," plaintiff's counsel objected to questions on cross-examination of his witness which included the phrase "bisque ware." (E.g., R. 42.)

Defendant adduced no testimony and introduced no exhibits into the record.

The competing tariff provisions are as follows:

Paragraph 212, as modified by the Protocol of Accession of Japan to the General Agreement on Tariffs and Trade, T.D. 53865:

China, porcelain, and other vitrified wares, including chemical stoneware (but not including chemical porcelain ware, sanitary ware and fittings and parts therefor, or electrical porcelain ware), composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, and all bisque and parian wares, including clock cases with or without movements, plaques, pill tiles, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; all the foregoing whether plain white, painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for:

  \*       \*       \*       \*       \*       \*       \*

Articles which are not tableware, kitchenware, table or kitchen utensils, or chemical stoneware, and which do not contain 25 per centum or more of calcined bone_____ 45% ad val.

Paragraph 214, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not \* \* \*:
If not decorated in any manner:

  \*       \*       \*       \*       \*       \*       \*

Other_____ 15% ad val.

Paragraph 214, under which plaintiff claims, is a provision for articles that are *not specially provided for*. It can have no application to any article for which the law makes special provision.

These articles are composed of earthy or mineral substances, of the same kind of materials as the raw materials of chinaware; they are fired to 2,300° Fahrenheit, as china is fired; and they are composed of a vitrified body, such as paragraph 212 specially describes. The issue is whether, on the record before us, plaintiff has shown that, present these facts, neverthless the imported articles are not "other vitrified wares," within the intent of that enumeration in paragraph 212.

Plaintiff's chief argument is that, in condition as imported, they are not *ejusdem generis* with the articles enumerated in paragraph 212. The substance of the argument is that glazing is essential to paragraph 212 classification, and these articles are not glazed.

This argument can most readily be disposed of by reading the text of modified paragraph 212, *supra*.

It will be observed that some of the "other vitrified wares" covered by the enumeration are specified, and that the specific enumerations

include articles that are known to be glazed (stoneware) and articles that are known not to be glazed (bisque and parian wares).

Plaintiff's witness testified that bisque ware could not be china *at the state that it is bisque*. (R. 47.) That, of course, is not the issue. The question here is not whether, as imported, articles are chinaware. The question is whether they fall within the enumeration of "other vitrified wares."

Plaintiff, according to Mr. Anderson, sold to a pottery company at one time bisque in a condition similar to the articles of collective exhibit 1. (R. 42.) This merchandise could be decorated. It could be glazed. That is what plaintiff does to this imported bisque, before selling it as china.

*Ejusdem generis* is a rule of interpretation, an aid to ascertainment of the intention of Congress. *United States* v. *C. J. Tower & Sons*, 44 CCPA 1, C.A.D. 626. As our appeals court there said (p. 5) :

The rule of *ejusdem generis* * * * is a well known rule of construction, often used by this court, to aid in arriving at the legislative intent of Congress, which, of course, is the ultimate consideration in the construction of tariff statutes.

It is an equally well-established rule of construction that resort will not be had to outside aids to interpretation, when the language of the statute is clear without resort to such aids. *United States* v. *Damrak Trading Co., Inc.*, 43 CCPA 77, C.A.D. 611.

Whatever ambiguities there may be in paragraph 212, there is no ambiguity that both glazed and unglazed vitrified wares are included in the enumeration of other vitrified wares.

Plaintiff argues that ware is not vitrified unless it has a *glassy external appearance*. By this, we understand that plaintiff distinguishes between a vitrified body showing a vitrified or semivitreous fracture, which this merchandise has, as the parties have stipulated, and a vitrified ware. That is to say, we are asked to rule that, notwithstanding the fact that the body of this ware is vitrified, it is not a vitrified ware.

This is a complex exercise in semantics, and one we find difficulty in following.

In "Know Your Merchandise," by Wingate, Gillespie, and Addison (McGraw-Hill Book Company, Inc., 1951), chapter 24 is entitled "From Clay to Chinaware." The first stage of making the ware is described (p. 554) as producing the article that is known as biscuit (bisque) ware. "It has a *dull* appearance and a rather rough texture." [Emphasis supplied.]

The process of producing "dishes with a shiny finish" is then described. The biscuit (bisque) ware is "smoothed by sanding and

covered with a glassy coating known as a *glaze*." [*Idem*, p. 554; emphasis copied.]

The process of manufacture in Japan, described by plaintiff's witness, is essentially this process of making unglazed vitrified ware, that is, ware that has a vitreous body, but which does not have a glassy finish. Inspection of plaintiff's collective exhibit 1 shows that the imported articles have the characteristic dull appearance and rather rough texture of bisque ware, which is a ware enumerated in paragraph 212. As plaintiff's brief reminds us, a sample is a potent witness. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995.

We have carefully reviewed the cases cited by plaintiff. We are not impressed that cases decided under the tariff provisions for glassware are relevant to the issue here, namely, whether these imported articles are vitrified ware.

We are of opinion that they were properly classified under paragraph 212. The protest is overruled and judgment will be entered for the defendant.

CONCURRING OPINION

RICHARDSON, Judge: I concur in the result.